UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARK SIMS,                              :
                                        :
          Plaintiff                     :
                                        :
     v.                                 :     CIVIL NO. 4:CV-01-1217
                                        :
CORRECTIONAL OFFICER McPEAK,            :
ET AL.,                                 :     (Judge McClure)
                                        :
          Defendants                    :

## MEMORANDUM AND ORDER

May 23, 2005

**Background**

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by Mark Sims regarding his prior confinement at the State Correctional Institution, Frackville, Pennsylvania (SCI-Frackville).[1]  Service of the complaint was previously ordered.  Named as Defendants were the following SCI-Frackville officials: Correctional Officer Richard McPeak; Sergeant Jerome Paulukonis; Unit Manager Joanne Miranda; and Lieutenant David Brown.

---

[1] On March 23, 2005, Plaintiff notified this Court that he had been released and was residing in Philadelphia, Pennsylvania.  See Record document no. 70.

Inmate Detrick Reed was assigned as Plaintiff's cellmate during their confinement at SCI-Frackville. This pairing occurred on December 14, 2000. Approximately four (4) days later, Sims complained to Correctional Officer McPeak that Reed was exhibiting "hostile, threatening and bizarre behavior." Record document no. 1, ¶ 10. McPeak purportedly instructed Plaintiff that he should present his concerns to Sergeant Paulukonis. Upon doing so, Sims' assertions were then referred to Unit Manager Miranda. Pursuant to a request from Miranda, the Plaintiff submitted an inmate request form on December 19, 2000 which detailed his problems with Inmate Reed and indicated his reasons for requesting a cell change.

Prior to acting on Sims' submission, Defendant Miranda "went on her Christmas vacation." Id. at ¶ 15. On December 20, 2000, Plaintiff again reported his cellmate's threatening behavior to Defendants McPeak and Paulukonis. Sergeant Paulukonis allegedly replied "that the matter was being handled by Defendant Miranda." Id. at ¶ 18. Sims contends that he made similar complaints on December 22, and 24, 2000, to no avail. During the morning of January 1, 2001, Plaintiff again spoke with Sergeant Paulukonis and Lieutenant Brown regarding Inmate Reed's ongoing behavior. Brown asked Plaintiff if he could wait until the next day to be moved to another cell. Sims' complaint clearly acknowledges that he "hesitantly agreed." Id. at ¶ 27.

An argument ensued between Sims and Reed after lunch on January 1, 2001. The argument escalated into a physical confrontation during which Reed allegedly struck Sims on the side of the head with a television set and stabbed him in the arm with a pencil with such force that the pencil became embedded in his arm. Plaintiff's injuries required him to undergo treatment at a local hospital. The gist of Sims' complaint is that by ignoring his complaints of Reed's threatening behavior, the Defendants were deliberately indifferent to his safety needs. His complaint seeks compensatory and punitive damages as well as declaratory relief.

By Order dated January 7, 2004, this Court denied the Defendants' motion to dismiss. Specifically, it was determined that "the failure of Plaintiff to allege that he exhausted administrative remedies is not fatal to his complaint." Record document no. 49, p. 7. The Order also concluded that the complaint alleged facts that could support that a failure to protect claim under the Eighth Amendment and that a decision regarding the Defendants' claim of entitlement to qualified immunity could not be reached due to the existence of numerous outstanding factual issues.

Presently pending before this Court is Defendants' motion seeking entry of summary judgment. See Record document no. 63. Defendants again argue that: (1) Sims failed to comply with the exhaustion of administrative remedies requirement; (2) the allegations in the complaint do not support a claim of deliberate indifference

because Sims agreed that his requested cell change could wait until the next day; and (3) the Defendants are entitled to qualified immunity.  The summary judgment motion has been briefed and is ripe for consideration.

**<u>Discussion</u>**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by

4

"'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, supra, 106 S.Ct. at 2553 and 2554.  Once the moving party has satisfied its burden, the nonmoving party must present "affirmative evidence" to defeat the motion, consisting of verified or documented materials.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.  Id.  In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the nonmoving party.

Defendants' initial summary judgment argument contends that Sims complaint should be dismissed because he failed to fully exhaust his available administrative remedies.  It is noted that in accordance with Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the Defendants' answer to the complaint, filed on November 10, 2004, raised Sims' failure to comply with the administrative exhaustion requirement as an affirmative defense.  See  Record document no. 59, Fifteenth Affirmative Defense.

With respect to the applicability of administrative remedies, 42 U.S.C. § 1997e(a) provides as follows:

5

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

The Pennsylvania Department of Corrections (DOC) has a Consolidated Inmate Grievance Review System. DC-ADM 804 (effective January 1, 2001). With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections

Regional Director; and a final written appeal may be presented to the Secretary's Office of Inmate Grievances and Appeals.

Pursuant to DC-ADM 804-4, a prisoner, in seeking review through the grievance system, may include requests for "a reasonable request for compensation or other legal relief normally available from a court."  (DC-ADM 804-4, issued April 29, 1998.).  Furthermore, [g]rievances must be submitted by the inmate for Initial Review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based," but allowances of extensions of time for good cause may be granted under certain circumstances.  Id.

In support of their non-exhaustion argument, Defendants have submitted a declaration under penalty of perjury by Chief Grievance Coordinator Sharon Burks of the Secretary's Office of Inmate Grievances and Appeals.  See Record document no. 67, Exhibit F.  Burks states that based on her review of the records of the Secretary's Office of Inmate Grievances and Appeals, Sims did not initiate any final appeals to her office "between January 1, 2001 and December 7, 2004."  Id. at ¶ 4.

A supporting affidavit by Assistant Chief Grievance Coordinator Kristen Reisinger acknowledges that Sims filed a grievance on January 23, 2001 "which was assigned grievance number FRA-0108-2001."  Id. at Exhibit G, ¶ 7.  The declarant adds that an initial review response by Defendant Brown, dated February 16, 2001,

7

denied the grievance. Thereafter, an appeal to Superintendent Chesney was denied by memorandum dated March 2, 2001. Reisinger next avers that based on a her review of two separate DOC tracking systems, Plaintiff "did not submit any appeals to final review, nor did he send any letters or any other documents' to the secretary's Office of Inmate Grievances and Appeals." Id. at ¶ 11. She further notes that even "mere letters, long as they contain the required information, are accepted for purposes of appeal to this office." Id. at ¶ 12.

  Plaintiff's opposing brief to the Defendants' motion to dismiss asserted that he should be excused from the exhaustion requirement because he is an illiterate confined in the Restricted Housing Unit (RHU) and his grievance and request slips were prepared by other inmates were subsequently transferred to other correctional facilities. See Record document no. 21, p. 7. Sims goes on to detail the filing of his initial grievance and appeal to Superintendent Chesney. However, his submission provided no indication whatsoever that he prepared a final administrative appeal. See id. at p. 8. Furthermore, copies of both his initial grievance and Superintendent's appeal were attached to his opposing brief.

  In a response to the request for summary judgment, Sims alleges for the first time that he did file a timely final appeal which he handed to an officer in the SCI-Frackville RHU for purposes of mailing. See Record document no. 65. In a second

response, Plaintiff states that he does not doubt that his final appeal never reached the Secretary's Office and indicates that SCI-Frackville staff prevented his final appeal from reaching its intended destination. See Record document no. 68, ¶ 19. The correctional officer is not identified in either of the Plaintiff's opposing submissions nor do those filings provide the date of this alleged attempted mailing.

In Banks v. Livingood, No. 99-3049, slip op. at p. 3 (3d Cir. March 16, 2000), the United States Court of Appeals for the Third Circuit addressed an inmate's argument that he could not satisfy the administrative exhaustion requirement because a prison grievance coordinator refused to process his complaint. The Third Circuit stated that because the prisoner had made a contradictory assertion that the grievance coordinator had provided him with responses, Banks "has not made a sufficient showing that it was impossible to exhaust his administrative remedies." Id.

As noted above, the instant Plaintiff has likewise made contradictory submissions with respect to the issue of whether he initiated a final administrative appeal. Sims, in opposing the Defendants' motion to dismiss, initially indicated that he could not pursue a final appeal because he was illiterate, housed in the RHU and the prisoners who had previously assisted him were transferred to other correctional institutions. Thereafter, in briefs opposing the pending summary judgment motion, Plaintiff generally states that while in the RHU he did in fact prepare a final

administrative appeal which he timely submitted to an unidentified correctional officer on an unnamed date for mailing.[2]

Under Federal Rule of Civil Procedure 56(e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's response, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial."  A non-moving party cannot rely upon allegations in memoranda and briefs to establish a genuine issue of material fact.  Rather, he must supply evidentiary material contradicting the record the moving party has submitted.

It is noted that the Plaintiff's vague contentions that he did prepare and submit a final administrative appeal have not been set forth in an affidavit or declaration submitted   under penalty of perjury as required by Rule 56(e). Furthermore, although Plaintiff filed copies of his initial grievance and Superintendent's appeal, he has not provided this Court with a copy of the relevant administrative appeal or any other documentary evidence that could establish that a final administrative appeal was timely filed.

---

[2]   Adding to the confusion is Sims previously filed request for reconsideration wherein he asserts that he was unable to file an opposing brief to the Defendants' motion to dismiss while in the RHU until he found someone, i.e, a fellow prisoner who was able to provide assistance.  See Record document 30, ¶ 12.

As noted above, Sims' vague, contradictory assertion of submitting a final appeal was set forth in two opposing briefs to the pending summary judgment motion. Since his averments were not set forth in an affidavit or submitted under penalty of perjury, they are not an adequate basis upon which to deny the request summary judgment.

Based on Burks' declaration under penalty of perjury, and Reisinger's affidavit under penalty of perjury, it is apparent to this Court that Sims failed to complete the DOC's administrative remedy process and that said failure rests solely upon his shoulders. Pursuant to the rationale developed by the Third Circuit in Banks, since Sims has not provided any adequate reasons as to why he should be excused from compliance with the exhaustion requirement, his above enumerated claims of constitutional misconduct are subject to dismissal under the requirements set forth in § 1997e(a). Consequently,

**IT IS HEREBY ORDERED THAT:**

   1. Defendants' motion requesting entry of summary judgment (Record document no. 63) is granted.

2. The Plaintiff's claims are dismissed for failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a).

3. The Clerk of Court is directed to close the case.

s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge
